USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 7/15/2011

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

THE ANNUITY, WELFARE, APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS of the INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C, and 15D, AFL-CIO by its TRUSTEES JAMES T. CALLAHAN, FRANCIS P. DIMENNA, ROBERT SHAW and JOHN BRUNETTI,

Plaintiffs,

- against -

PERSICO CONTRACTING & TRUCKING, INC.,

Defendant.

---

10 Civ. 5221 (JGK)

**MEMORANDUM OPINION AND ORDER**

JOHN G. KOELTL, District Judge:

The Annuity, Welfare, Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C, and 15D, AFL-CIO by its Trustees James T. Callahan, Francis P. Dimenna, Robert Shaw and John Brunetti (collectively "the plaintiffs") bring this action against Persico Contracting & Trucking, Inc., ("the defendant") under sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145. The plaintiffs now move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

I.

The standards applicable to a summary judgment motion are well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists . . . ." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). In determining whether that burden has been met, the Court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elect. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "It is not the province of the court itself to decide what inferences should be drawn . . .; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper . . . ." Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000). "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in

the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). See also Bank of Am., N.A. v. Vergest Ltd., No. 10 Civ. 4682, 2011 WL 92751, at *1 (S.D.N.Y. Jan. 11, 2011)

**II.**

**A.**

Pursuant to Local Civil Rule 56.1, a party moving for summary judgment must submit along with its notice of motion a statement of material facts (a "56.1 statement") as to which it alleges there is no genuine issue to be tried. Each statement must be followed by a citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56(e). The party opposing the motion must submit a responsive statement of facts as to which a triable issue remains. If the opposing party fails to submit a responsive statement, then the facts set forth in the moving party's 56.1 statement are deemed admitted. Local Civil Rule 56.1(a)-(c); see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001). However, "[t]he local

rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local 56.1 statement itself is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz, 258 F.3d at 74. Moreover, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Id. at 73.

In this case, the plaintiffs have submitted a 56.1 statement with their motion for summary judgment. The statements were properly supported by citations to admissible evidence. The defendant has not submitted a response to the plaintiffs' 56.1 statement, nor has it proposed a competing version of the facts anywhere in the record.[1] Therefore, the Court deems the facts set forth in the plaintiffs' 56.1 statement to be admitted, insofar as they are supported by the factual record in this case. See Cress v. Wilson, No. 06 Civ. 2717, 2008 WL 5397580, at *5-6 (S.D.N.Y. Dec. 29, 2008).

---

[1] The defendant's response to the plaintiffs' motion consists of an affidavit from Rogelio Gan, controller for the defendant, and attached exhibits. The documents essentially assert that there are "no less than two major mistakes," in the plaintiffs' audit and that with additional discovery, more mistakes may be found. The allegations in the defendant's papers are addressed below.

**B.**

The evidence submitted to the court reflects the following facts.

The Annuity, Welfare, Apprenticeship Skill Improvement & Safety Funds (collectively "the Funds") of the International Union of Operating Engineers Local 15, 15A, 15C and 15D, AFL-CIO (collectively "Local 15") are joint trustee funds established by "various trust indentures" pursuant to the Labor Management Relations Act, 29 U.S.C. § 186, and constitute multi-employer/employee benefit plans within the meaning of ERISA, 29 U.S.C. §§ 1002(3) and (37). James T. Callahan, Francic P. Dimenna, Robert Shaw and John Brunetti (collectively "the Trustees") are the trustees of the Funds and are fiduciaries within the meaning of ERISA, 29 U.S.C. § 1002(21). The Funds are responsible for the collection of certain pension and fringe benefit contributions from businesses that have collective bargaining agreements ("CBAs") with Local 15. The defendant is a contracting company and an employer within the meaning of ERISA, 29 U.S.C. § 1002(5).

In October 2000, the defendant entered into a CBA with Local 15. (Pl.'s 56.1 Stmt. ¶ 1.) The Agreement to be bound by

the CBA was signed by both the plaintiffs' and the defendant's representatives. (Steinberg Aff. Ex. C ("Agreement") at 1.) The CBA contained terms and conditions for the employment of the defendant's employees whose jobs fell under the jurisdiction of Local 15 as well as requiring the payment of fringe benefit contributions by the defendant on behalf of those employees ("qualifying employees"). (Pl.'s 56.1 Stmt. ¶¶ 2-3.) The Agreement required that the signatories agree to be bound by all trust agreements and regulations created by the plaintiffs. (Agreement at 1.) The plaintiffs' trust agreement gives the plaintiffs the authority to establish rules and regulations for the operation of the Funds. (Steinberg Aff. Ex. D Art. VI Sec. (d).) Pursuant to that authority, the plaintiffs promulgated a set of general policies for the collection of required contributions, which includes the right of the plaintiffs to collect all due contributions, establish an audit program, require delinquent employers to pay contributions, interest, attorneys' fees and "other expenses incurred by Local 15." (Steinberg Aff. Ex. E at 1-2.) In order to pay required fringe benefit contributions, contributing employers like the defendant pre-purchase stamps and distribute them to qualifying employees in proportion to the number of eligible hours they worked.

(Steinberg Aff. Ex. E at 2.); see also (Keenan Aff. ¶ 4.) The qualifying employees then redeem the stamps. (Keenan Aff. ¶ 4.)

With the consent of the defendant, the plaintiffs conducted an audit of the defendant's books and determined that the defendant owed $13,043.00 in unpaid fringe benefit contributions and interest for the period of October 1, 2006, to June 30, 2007. (Callahan Aff. ¶¶ 2, 4); see also (Steinberg Aff. Ex. F ("Audit") at 4.) The auditor accounted for all stamps purchased by the defendant but not redeemed by the employees and credited them to the appropriate participant. (Audit at 1.) The audit report also found that the defendant underreported its employees' gross wages. (Audit at 2.) In response to the audit report, the plaintiffs filed this action alleging (1) the defendant violated 29 U.S.C. § 1145 by failing to make required fringe benefit contribution payments between October 1, 2006, and June 30, 2007, and (2) that the defendant underreported the number of employees, the number of hours worked and the wages paid to employees, as well as the contributions due to the plaintiffs from July 1, 2009 to present. The plaintiffs seek $13,043.00 in delinquent fees and interest, $6,290.66 in attorneys' fees, as well as $ 2,713.00 in auditors' fees and $398.00 for the costs of filing this action. The plaintiffs also seek an order requiring the defendant to submit its records

to the plaintiffs for audit at the defendant's expense, in accordance with 29 U.S.C. § 1132(g)(2)(E).

In response, the defendant claims it purchased the required stamps for at least two of its qualifying employees, and argues that with more time for discovery, it may find more errors in the plaintiffs' audit. (Gan Aff. ¶¶ 5, 8, 9.)

## III.

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. If an employer fails to make the required contributions, "a fiduciary of the plan may sue the employer, or another fiduciary of the plan, as that term is defined under ERISA, to recover the unpaid contributions." Finkel v. Romanowicz, 577 F.3d 79, 85 (2d Cir. 2009). ERISA includes trustees in its definition of fiduciary, and the defendant does not contest that the trustees are fiduciaries of the Funds within the meaning of ERISA. Therefore the plaintiffs have standing to bring this action under § 1145. 29 U.S.C. §

1002(14)(a). Further, the plaintiffs' audit plainly shows the delinquency of the defendant in paying its required fringe benefit contributions. See (Steinberg Aff. Ex. F ("Audit") at 5.)

In opposition to the plaintiffs' motion, the defendant contends that it provided the required stamps to at least two qualifying employees and that with more discovery it could potentially find additional errors in the plaintiffs' audit. (Gan Aff. ¶¶ 5, 8, 9.) In support of its contention, the defendant attaches photocopied pay stubs for employees Andrew J. Luneau ("Luneau") and Chad Dobish ("Dobish"). (Gan Aff. Ex. A.) Stamps from Local 15 are attached to each employee's pay stub. The defendant asserts that these attachments prove that it paid fringe benefit contributions to these employees. Based on this alone, the defendant claims that the audit is flawed and urges the Court to allow for further discovery. (Gan Aff. ¶ ¶ 5,7, Ex. A.) The evidence, however, does not support the defendant's contention or a need for further discovery.

Luneau and Dobish are members of Local 15 and 15A, divisions for employees who operate heavy machinery. (Keenan Aff. in Further Supp ("Keenan Reply Aff.") ¶¶ 3-4.) Therefore, they should receive stamps from division 15A of Local 15. (Keenan Reply Aff. ¶ 3.) However, the stamps attached to their

paystubs are clearly marked "15D," a division of Local 15 related to surveyors. (Gan Aff. Ex. A.) Contrary to the defendant's assertion, because neither Luneau nor Dobish were given the correct stamps, the plaintiffs' did not receive the appropriate fringe benefit contributions as required by the CBA. (Keenan Reply Aff. ¶ 5.) Moreover, because the value of a 15D stamp is less than that of a 15A stamp, the plaintiffs would not have received adequate contributions, as required by the CBA, even if the 15D stamps were redeemable. (Keenan Reply Aff. ¶ 3.) Aside from the two employees discussed above, the defendant offers no evidence to question the accuracy of the audit, nor does the defendant offer evidence which contests the causes of action against it. [2] Moreover, the defendant has had ample time to review its own records since the audit report was released on April 20, 2010, and the defendant offers no persuasive reasoning for why additional time for discovery is necessary. (Audit at 2.) Accordingly, the plaintiffs are entitled to summary judgment as to their claims of the defendant's violation of § 1132 and § 1145.

[2] The defendant does not assert either of the two defenses available to employers against whom judgment is sought for unpaid fringe benefit contributions, (1) that the contributions are illegal or (2) that the collective bargaining agreement is void. See Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990)(collecting cases).

IV.

Pursuant to 29 U.S.C. § 1132, the defendants request an award of damages for the defendant's failure to pay fringe benefit contributions as required by the CBA and § 1145.

For claims under § 1145, ERISA provides for the recovery of unpaid contributions, interest on unpaid contributions, statutory damages in the amount of the owed interest or in the form of predetermined liquidated damages, reasonable attorneys' fees and costs of filing the action, and other legal and equitable relief as the court should deem appropriate. 29 U.S.C. § 1132(g)(2).

A.

The plaintiffs' audit report reflects unpaid contributions totaling $11,830. (Audit at 5.) The defendant has offered no evidence to contradict this figure, nor is there reason to believe that it can provide evidence which will contradict the findings of the audit. Accordingly, the plaintiffs' are entitled to an award of $11,830.00, the amount of the unpaid contributions.

B.

ERISA instructs that any awarded interest on unpaid contributions be calculated using the rate determined in the plan, if provided. 29 U.S.C. § 1132(g)(2)(b). The plaintiffs have calculated interest in accordance with Local 15's collection and audit procedures, which stipulate that all delinquent contributions are subject to additional interest at 1% above the prime rate. (Steinberg Aff. Ex. E at 3.) The plaintiffs submit that the amount of interest is $1,685.47, which represents the application of the prescribed interest rate, 4.25%, from the date the contributions were first due through the filing of this motion, accrued annually. (Steinberg Aff. ¶ 8); see also (Audit at 5); Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc., No. 98 Civ. 4040, 1999 WL 370667, at *2 (S.D.N.Y. June 7, 1999)(calculating the interest rate from the date ERISA contributions first became due). Accordingly, the plaintiffs are entitled to an interest award in the amount of $1,685.47, up to the date of the filing of the current motion.

C.

ERISA also provides for an award of statutory damages in the amount of either the accrued interest or liquidated damages if provided for in the plan. 29 U.S.C. § 1132(g)(2)(C). Because the plan in this case does not provide for liquidated damages, the plaintiffs are entitled to statutory damages in the amount of the interest on the unpaid contributions, $1,685.47.

D.

In an action under § 1145, an award to the prevailing party for attorneys' fees and costs is mandatory. See Tr.s of Bricklayers & Allied Craftworkers Local 5 N.Y. Retirement v. Helmer-Cronin Const., Inc., No. 03 Civ. 0748, 2005 WL 3789085, at *3 (S.D.N.Y. Oct. 24, 2005)(citing Labarbera v. Clestra Hauserman, Inc., 369 F.3d 224, 226 (2d Cir. 2004)).

In order to determine what constitutes "reasonable" attorneys' fees, the starting point is the "lodestar amount," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate for attorneys and paralegals. See City of Burlington v. Dague, 505 U.S. 557, 559 (1992); McDonald v. Pension Plan of the NYSA-ILA Pension

Trust Fund, 450 F.3d 91, 96-98 (2d Cir. 2006); Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992); Indep. Living Aids, Inc. v. Maxi-Aids, Inc., 25 F.Supp.2d 127, 132 (E.D.N.Y. 1998); Scanlon v. Kessler, No. 97 Civ. 1140, 1998 WL 726047 at *2-3 (S.D.N.Y. Oct. 14, 1998). The fee applicant bears the burden of submitting contemporaneous time records that support the hours worked and rates claimed. See N.Y. State Ass'n. for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983). There is a "strong presumption" that the lodestar is reasonable. See City of Burlington, 505 U.S. at 557; Lunday v. Albany, 42 F.3d 131, 134 (2d Cir. 1994). The party that asks the court to depart from the lodestar amount bears the burden of proving that such a departure is necessary to the calculation of a reasonable fee. See Grant, 973 F.2d at 101.

Once the lodestar is calculated, other considerations may justify an adjustment of the fee upward or downward, including in particular the degree of success obtained. See Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 96-97 (2d Cir. 1997) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); see also BNP-Dresdner Bank ZAO v. Hague, No. 98 Civ. 1109, 1998 WL 831353 at *1 (S.D.N.Y. Nov. 30, 1998).

The plaintiffs request a lodestar award of $6,290.66, the result of 20.25 hours of work by James M. Steinberg at a rate of

$310.65 per hour. (Steinberg Aff. ¶ 12.) The plaintiffs have included a list of all work done by their attorney that specifies how the work relates to this action. (Steinberg Aff. Ex. H.) All of the billed hours relate directly to this action and are of a reasonable duration. $310.65 per hour is a reasonable rate for an attorney in the Southern District of New York. See Tr.s of N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines Corp., No. 09 Civ. 9997, 2011 WL 767162, at *4 (S.D.N.Y. Mar. 4, 2011), report and recommendation adopted as modified, sub nom. Romita v. Anchor Tank Lines Corp., No. 09 Civ. 9997, 2011 WL 1641981 (S.D.N.Y. Apr. 29, 2011)(collecting cases). Moreover, the defendant does not challenge the plaintiffs' calculation of attorneys' fees. Therefore, $6,290.66 is a reasonable award for attorneys' fees.

**E.**

The prevailing party in an ERISA action is also entitled to, "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." King v. JCS Enterprises, Inc., 325 F. Supp. 2d 162, 171 (E.D.N.Y. 2004)(quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)). The

plaintiffs submit that the costs of filing this action were $398.00, which includes a $350.00 filing fee for filing the Complaint, as well as a $48.00 service fee incurred when the plaintiffs served the defendant with the summons and complaint. These costs are reasonable and are normally charged to fee-paying clients. See Perishable Food Indus. Pension Fund v. Am. Banana Co., Inc., No. 01 Civ. 1922, 2003 WL 21542316, at *6 (S.D.N.Y. July 1, 2003), report and recommendation adopted, 01 Civ. 1922 (2003)(No. 13). As a result, the plaintiffs are entitled to $398.00 for costs.

**F.**

While ERISA does not specifically provide for the recovery of auditor fees, it does allow for the recovery of "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Courts have routinely considered auditors' fees to be an appropriate component of an award to a prevailing party in an ERISA action, particularly where a CBA specifically provides for the recovery of such fees. See Helmer-Cronin, 2005 WL 3789085, at *7 (collecting cases). Here, the collection and audit policies of Local 15 give the plaintiffs the right "to require that the delinquent employer

pay the cost of [an] audit . . . ." (Steinberg Aff. Ex. E at 1.) The plaintiffs paid $2,713.00 for the audit of the defendant's books, which appears reasonable for this action. See The Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Qualcon Constr., LLC, 10 Civ. 4994, 2011 WL 2207519 at *3 (S.D.N.Y. Apr. 29, 2011) report and recommendation adopted, 10 Civ.4994, 2011 WL 2207546, at *2 (S.D.N.Y. June 6, 2011).

Accordingly, the plaintiffs are entitled to an award of damages in the amount of $24,602.60 for unpaid contributions, interest, statutory damages, attorneys' fees and costs, and the cost of the audit.

## V.

Finally, the plaintiffs request that the defendant turn over all books and records for an audit at the defendant's expense. The CBA and Local 15's collection and audit policies, by which the parties are bound, expressly provide that the Funds have:

> [T]he right to audit the financial records of contributing employers, including but not limited to payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the

> employers necessary in order for the auditor to ascertain if proper contributions have been made . . . [and] the right to require the delinquent employer pay the cost of the audit.

(Steinberg Aff. Ex. E at 1.) Accordingly, the defendant is ordered to submit to the plaintiffs for inspection all records and documents that are relevant to determining whether the defendant has underreported the number of employees, the amount of employee hours and wages, or the contributions due for the period of July 1, 2009 to date. The defendant is also required to pay the costs of the audit, in accordance with the CBA, Local 15's collection and audit procedures, and 29 U.S.C. § 1132(g)(2)(E). See Maguire v. Am. Piles, Inc., No. 01 Civ. 9483, 2002 WL 31626972, at *1-2 (S.D.N.Y. Nov. 21, 2002)(requiring audit at employer's expense to discover possible ERISA violations).

## Conclusion

The Court has carefully considered all of the parties' arguments. To the extent not specifically discussed above, they are either moot or without merit. The plaintiffs' motion for summary judgment is **granted**. The Court awards the plaintiff $24,602.60 in damages and orders the defendant to submit to an

audit by the plaintiffs at the defendant's expense. The Court will enter the Judgment proposed by the plaintiffs and include the requirement that the defendant make its books and records available for an audit by the plaintiffs at the defendant's expense. The Clerk is directed to close the case.

**SO ORDERED.**

**Dated: New York, New York**
**July 14, 2011**

**John G. Koeltl**
**United States District Judge**